Good morning, and may it please the Court, I'm Rachel Jones from Heller-Urman, of Wyden, McAuliffe, on behalf of Appellant Immune, Non-Party, Republic of the Philippines. The Republic brings this appeal in order to protect its sovereign immunity and does not hereby waive its immunity. I'd like to reserve five minutes of my time for rebuttal. We are, uh, it was unexpected that the Republic would have to be back before this Court, not only on this day, uh, in particular, but more broadly in light of the prior orders that the Ninth Circuit has issued regarding the District Court's actions in this case. And perhaps most pert- pertinently, uh, in the Credit Suisse action in 1997, the Court specifically directed, uh, the District Court to refrain from taking any further action in any other case involving the real parties in interest, which is the Hilao class and the assets of the estate of Ferdinand E. Marcos held or claimed to be held by Credit Suisse and or Swiss Bank Corporation, uh, the banks. And that is the same assets that are at issue currently. Um, the history of the Credit Suisse case explains why the Court came to take the somewhat dramatic step of issuing that order and retaining jurisdiction for itself. Initially, the plaintiff class attempted to enforce its judgment by service of writs of execution and notice of levy, and, uh, this Court held that those were ineffective. And the District Court, um, thereafter tried to, uh, order the Swiss banks to deposit this- the assets at issue in the District Court's registry to commence an interpleader action. On appeal in the, uh, one of the Hilao cases, 95F3848, this Court held that that was also impermissible and not authorized as a way of enforcing the judgment. So, on remand, the District Court then, uh, in a new action that the plaintiff class commenced against the Swiss banks, issued an injunction very similar to the injunction that has been issued now on September 2nd, 2003, ordering the, uh, Swiss banks not to transfer or convey the funds at issue, uh, without permission by the District Court. And of course, that's exactly what it did again in September 2003 with respect to the very same funds. Um, the plaintiff class has contended that this order does not apply to the District Court's actions now, that, uh, the District Court was free to act with the assets despite this Court's retaining jurisdiction, ordering it not to do so because, uh, of the language at the end of the order to the District Court, namely that the assets were held or claimed to be held by the Swiss banks. Um, obviously, by that point in the litigation, it had become clear to the Court that the District Court, um, was not following the letter or the spirit of this Court's mandate as it's required to do. And I think this language was intended to make the Court's order to the District Court as clear as possible by identifying with specificity which assets were met and where those assets were at the time. Counsel, I know that, um, the Philippine National Bank case that has some relationship to this case potentially, uh, has already been argued for a different panel. In your view, uh, is there a reason why this panel, uh, must or should await the outcome of that proceeding or do you believe that they're sufficiently on different tracks that we should go ahead and decide this case? And I'd like opposing counsel to respond to that question as well. Your Honor, we, at the time the Philippine National Bank case was submitted, um, we actually requested that that Court consider the briefs in our case. We do believe that the two appeals are very closely related. They arise, obviously, out of the same District Court action and concern the same injunction, the same assets. Our appeal, if I remember correctly, and I simply through the way the Court schedule has occurred, that case was argued first. Well, let me, let me, uh, represent to you that ordinarily the way our procedures work, the case that is submitted first takes priority and so assuming for the moment that that would be the rule that we would follow, should one case wait for the other or should they go ahead and take priority and be dealt with separately? I think they should go ahead, Your Honor. There are issues in each case that are separate from the issues in the other. In this case, of course, there's the sovereign immunity issue and the issues of the active state doctrine and comity and, uh, the jurisdictional issues that relate specifically to the Republic and the, that have not appeared, um, but who are holding the assets of the Republican, um, are with the Republic under the direction of the Swiss courts, um, which are separate from the issues that are specific to the Federal National Bank, which, um, there, I believe there were issues relating to the service on the Philippine, I don't know as much about that appeal, but I know there are issues that are specific to that appeal also, which are separate and, um, I would say that both cases can proceed to a decision. If there is a, um, procedure by which the court is able to consolidate them for decision, that might be appropriate, but I think that they can also proceed independently, um, quite fairly. Now, admittedly, there are issues that are almost identical regarding the validity of the orders issued by the district court and, of course, there would be issues as to the second case if the two cases were not decided for appeal, but I think, um, and I obviously can't speak for the Philippine National Bank, but I think it would be our position that both cases have been argued or will have been argued and everyone will have had a chance to submit the issues to the court. If the court on each panel is able to look at the briefs of the other appeal, that might be beneficial, but I think that in either case it's a decision. Well, um, maybe, maybe being we've wandered down this road, um, as I understand it, the money is the issue. Some, everybody wants the money and, I mean, you may be interested to know about your sovereign immunity, but sooner or later people are trying to get to the money. And as I understand, the money is all now in Singapore. Uh, Your Honor, to one, about your, your point that this is all about the money, ultimately this appeal is not about the money. The Republic of the Philippines has no desire for this court to adjudicate anything regarding entitlements of the money, uh, in light of our sovereign immunity and the other concerns that we've briefed and... I, I know, I know that, but if the money slipped away from you, you wouldn't be very happy. In other words, everybody's trying to say that the money belongs in a certain spot and the Republic and the Philippines, because of their legislative acts and judicial acts, have said the money belongs to us. And as I understand, all the money in question is in, is in Singapore, I think, but I'm not sure. Well, physically, I believe that some of, some $22 million is at a minimum still in Singapore in an interpleader action in Singapore resulting from the Singaporean court's confusion arising out of the conflicting orders of the district court and the Philippine courts and the Swiss courts. Okay. That money at a minimum is in Singapore. Okay. Um, there may be other assets that have already been transferred to, um, the Republic of the Philippines pursuant to the Philippine court's orders. Yes. And the legal location of the assets has at all times been in the Philippines. Um, the appellees have conceded in their briefs that the relevant locus of the assets, the situs of the assets, is the branch at which the deposit is made. And in this case, it is undisputed that the assets were deposited in escrow with the Philippine National Bank in Manila. Mm-hmm. And any choice that bank may have made internally to hold the assets in financially secure institutions in other countries is not relevant to where they were deposited relevantly in this action. So they are actually being held legally in the Philippines, although physically, some of them may, in fact, be in Singapore. By depository agreements there. Well, not by depository agreements of the parties who deposited them. They're being held pursuant to the escrow agreement with the Philippine National Bank in the Philippines. But the Philippine National Bank itself may have some internal banking arrangements with the Singaporean banks by which they hold the assets for each other in a secure manner. In any case, they would be subject to the second order in this case. In other words, we'd consider them necessarily, because the second order in this case purports to freeze all of that. Yes, the order directing compliance. Yes. Yes, it purports to freeze all assets held by any person, bank, institution, or indeed governmental entity worldwide. How does your client have any standing to appeal with respect to that piece of the issue before us? When you say with respect to that piece of the issue? With respect to the order directing compliance, because it is not directing compliance by your client. It's directing compliance by somebody else, and you are incidentally affected. But I don't understand how you would have standing to appeal that. Well, the orders were written and issued together and taken as a whole. And the order directing compliance is directing compliance with the terms of the memorandum and order issued on the same date. And those orders taken as a whole are directed specifically to the Republic of the Philippines. If we view them as two separate documents requiring two separate acts, what would your position be? Do you mind if I just pick up the... They are separate documents. They are separate documents, although... The fact that they are written on the same day is interesting, but they are separate documents. The language of the second order states, it is the order that any such transfer without first securing and showing clause in this court as to how such transfer might occur without violating the court's injunction shall be considered in contempt of the court's earlier order. And the injunction being referred to is the injunction contained in the prior order, the first of the two orders. Additionally... That order still appears to be directed only to the banks that are holding funds. It's directed to any persons or institutions worldwide who participate in a transfer of the funds. Right, but an institution transferring funds, ordinarily the way that you talk about an institution transferring funds, it would have to be a bank that was transferring funds. They might do it pursuant to somebody's order, request, or instruction. But it would still be a bank that would be... I am confident that if the Philippines tried to instruct a bank in Singapore to transfer funds into Manila, and the district court said the Philippines is in violation of my injunctions, you would come forward and say, oh, the bank may be in violation of the instructions, but we certainly are not. I should have quoted the language of the order more exactly, Your Honor. It is in fact all persons and banking institutions participating in such transfers, which I think... I guess I read that differently than you. I guess I read that to mean if it went through more than one bank, or sometimes there's more than one stop for money that's transferred from a bank to either another bank or to a final destination. And I guess I took it to mean the transferring, not the recipients, were the ones that are referred to. If you read the order directing compliance as a whole, I took it to mean only... everybody but the recipient, I guess. Your Honor, that's, I think, a fair reading of the order, but I think you can understand why, confronted with the very broad language of this order, the Republic of the Philippines would feel some anxiety about the district court's clear intent to bind it, expressed in the language of the first order. Additionally, it is also clear that regardless of whom the order is actually ordered to transfer or not transfer assets, the effects of the order is explicitly targeted at the Republic of the Philippines. Well, I guess I have a little more trouble with that piece of it. I guess I'm trying to think of an analogy, but if someone is ordered not to testify and that's harmful to some party in litigation, I'm still not sure that the order not to testify could be... well, I don't know, maybe that's a bad analogy. Well, a closer analogy, Your Honor, might be if you and I had a contract and you were going to deliver money to me tomorrow, and then today some court ordered you not to give my money to me, I would be the one actually harmed by that order. If you were not the one who would be in contempt, which is what the order threatens, it says I direct you, bank, not to do something, and if you do it anyway, I'm going to try to put you in jail. Essentially. I mean, that's kind of a loose translation of the order, but... It's undisputed, I think, that the Philippines could not in any case be threatened with contempt because of its sovereign immunity, but the standard which the class has articulated for harm sufficient to provide standing is that the hallmark of cognizable hardship is direct and immediate harm, and it's clear that there has been direct and immediate harm targeted at the Republic here, and designed to interfere with the Republic's implementation of its courts in how to adjudicate entitlement to the asset, hold the assets pending a final resolution of that adjudication. Now, I am happy to take more questions on this. I note that I'm at five minutes, and... You're welcome to save the rest of the time for your Good morning, ma'am. Please, the court. My name is John Van Dyke, representing the human rights victims in this case. I'm going to be taking 14 minutes and yielding six to William Edlund, who's here representing the Marcoses. I have one sort of overriding question as I'm working my way through all of this, and like Judge Brunetti, I guess I'm thinking that ultimately the question is who gets the money, and it seems to me that the settlement that has been reinstated is illusory in a sense, because it required, as I understand it, the Republic to sign off on it, and they won't, and so nobody can make them do that, or at least nobody in this court can make them do that. So why are we having this conversation, I guess? Why does this even have any real effect, even if it was proper to... The settlement was reached through a protracted process that the district court supervised after the Credit Suisse decision, and so that partially answers the issue that Count raised a moment ago, that the Credit Suisse decision was viewed by all parties as not limiting any of the district court to look at those funds once they left Switzerland, and all parties, including the Republic of the Philippines, who was represented by Senator Birch Bayh during those negotiations, understood that those monies were available to be used for settlement, and an agreement was reached. Now, just recently, and we've attached in our supplemental excerpts of record the testimony of Senator Bayh, who came back into the district court to explain his role in that process, and he explained that it was his impression that a binding settlement had been reached, which the Republic then reneged on, and so... In what sense? Because it was subject to their decision to approve it, but... Well, that's the way it was subsequently drafted in some of the documents, but it was Senator Bayh's understanding, as agent and counsel for the Republic, that he had negotiated a settlement that the Republic had fully accepted, and was fully prepared to fund, and was enthusiastic about, because the result of the settlement was that large amounts of money would then go to the Republic itself, which it was very desirous of obtaining. So, it was viewed by everyone as a win-win situation, and I think Judge Reel, now looking back upon it, has thought that perhaps we should take a look at whether a binding agreement was reached, and he has sought to have further proceedings on that, and that's one of the reasons he wants to continue taking discussions on this matter. Is the Republic a party to the settlement agreement? The Republic was very much a party to the settlement agreement, as Senator Bayh understood it, and he was representing them at the time. He was representing the Philippines Coalition on Good Government. He was representing the Republic of the Philippines. Maybe that's where I'm wrong. Is the signatory to the agreement the Commission or the Republic? It says, Chairman, Philippine Commission on Good Government. Yes, we have some documents in the record. These may not be complete in reflecting the full nature of the settlement, and there clearly are other documents that are not before you that are also part of the settlement. So, I think you should just understand that the nature of the settlement is still being factually developed, and there were some parts of it that weren't clear to everybody involved, but Senator Bayh is the person who most fully understood it. Well, then explain then how, and I don't want to take all your time, how the undertaking which was entered into between the Commission on Good Government and the Philippine Bank, who was the escrow agent, said that they would agree to release the $1.5 million so long as conditions were satisfied, and the third condition that the release and transfer of the $150 million be subject to approval of the San Diego Ban, another confident court, and the President of the Republic of the Philippines, which didn't happen, which then resulted in the attempt to levy, which resulted, which is where we are now, and that's the point when Judge Rios said, whoops, I understand that there's been the court ruled against this undertaking, which was a clear condition of the undertaking, and that's when he entered the two orders, and that's why I can't put these things all together. Is the Republic of the Philippines relieved of anything if they were there through the Commission or whatever Senator Bayh made when those two conditions of the undertaking weren't satisfied? Well, it was Senator Bayh's testimony that those conditions were added later. In other words, they were not part of the deal as he understood it and as he negotiated on behalf of the Republic. But it seems to me the documents I have, and I may just be, I just may not have reviewed this properly, one of the parties is the Philippine Commission in Good Government, and that's the settlement. In the undertaking, one of the parties is the Commission on Good Government, same folks. And I don't see the Republic of the Philippines in any other form as an entity in either of these agreements. Your Honor, the written documents you have in front of you do not reflect the entire nature of the agreement. They are elements of it. And they're not within the record of this case? Well, no, the documents you have are part of the record. No, no, I'm talking about these other documents. Well, we're just now developing additional information, and we just had a hearing, which we've attached in our supplemental excerpts of record, where Senator Bayh testified in and he specifically testified that he was no longer under any attorney-client privilege and thought it was appropriate to come forward and to explain what had happened to the other members of the agreement who hadn't fully understood his role and what the Republic's involvement was. So this is still somewhat incomplete, and the district court is anxious to fill out the rest of this record so that we'll have a full understanding of this. Have there been any additional settlement discussions beyond the settlement that seems to have been made and then failed? There have not been any serious discussions. The other parties have all been prepared and have said very clearly that they're prepared to go through the Ninth Circus mediation process. The Republic of the Philippines has refused to participate in that proceeding. Do I read the settlement correctly that even though you had received a larger judgment, you were willing to settle everything for $150 million? Yes, Your Honor. The judgment was for $2 billion for a class of 10,000 or so, 9,500 victims. The thought was that it was important to get money to the victims before they died. That's okay. I'm just trying to get the structure. Again, I think it's all about the money. You want the $150 million. Apparently, the Republic of the Philippines, if I read the briefs right, saying nobody's going to get anything. We want that money. Marcos took it out of here. We passed the Agricultural Act. We've got this Good Government Act. We don't care about anybody. We want all the money. So no matter where it is, nobody's going to get anything. That's correct, Your Honor. Except that the Commission for Good Government signed these documents willing to release $150 million. Well, the Philippine government has changed over time, and they've taken different and inconsistent positions over time. And then it gets back to that tagline they put in the bottom, the condition. They said, fine, we'll give you $150 million, but the court, the special courts, and the President have got to approve this. And that apparently was agreeable to everybody because they signed it. Well, the... You didn't sign it. The Philippine bank did. Yeah, let me just reiterate one point, that we're 18 years after the end of the Marcos era, and the Republic of the Philippines has done nothing for the victims. They have no procedure. They provide no compensation, even though under the Torture Convention, which they are a party to, that's obligatory. And so they're very much in dereliction of their duty. Let's get back to this. If the settlement stood alone, you could seek some sort of enforcement of that settlement. And whether or not the money was held by the Philippine banks or not, if you could get your hands on it, you could get your hands on it, whether it's in Singapore or there. The only effect, it seems to me, of the undertaking was there was money in the Philippine bank which could have been released immediately, tomorrow morning, but the bank's not going to release it without something happening. So the fact that the court said to the bank, don't release it, I'm talking about the undertaking, and the court said, and the president said don't release it, that doesn't mean that that undertaking should prevent you going forward with the settlement, as I understand your argument. Which means, that means, if there's money in Singapore, which is not subject to the money, I assume not subject to this undertaking, I don't know, you could go get it there. Is that right? Yes, your honor. Even though this case is presented as a kind of unorthodox appeal by a non-party, basically what we have here is a dispute between two judgment creditors that are fighting over the money. I'm going a little tighter. I'm going to the issue of whether or not the judge could have issued the first decision, i.e. reinstating the settlement. Because I don't understand reinstating the settlement.  They had no jurisdiction, as I understand it, over the settlement. Is that right? That's absolutely right, yes. So all the judge said was, look, because they have repudiated the methodology to fund the settlement, i.e. execution or release of the monies from the Philippines, I'm reinstating the settlement, which allows you to go get it wherever you can. Again, go get the money somewhere. That's right. Is that your position? Yes, your honor. Forget about the republic for a minute. Because if they're not party to this agreement, you've still got an agreement with someone, this commission for good government, to get $150 million somewhere. The victims have what's now a $3.5 billion judgment that's been fully approved by this court. And so our position is that we're able to pursue $3.5 billion. But you are willing to take $150 million and execute or get it wherever you could. Yes. And we're still, of course, very anxious to discuss settlement and if that settlement could be reinstated with interest on the $150 million, then we would certainly be happy to take a very close look at that. And we are aggressively pursuing assets in every possible way that we can. And we want this court to dismiss this odd appeal because the republic does not have standing, as Judge Greenberg, I think, indicated in her questions. This is a situation where there is no... Well, my question, though, actually went only to half of it. The order, the memorandum in order, does appear to bind or attempt to bind the Republic of the Philippines. And why, even though they're a party, wouldn't they have jurisdiction to bring that issue to us? If you look, Your Honor, on page ER-0155 under TAF-16, which is where the order is, the third sentence refers specifically to the 1996 decision of this court at 94 F. 3rd 539, where the court recognizes the republic's sovereign immunity. In other words, the district court is specifically acknowledging that decision and issuing his memorandum in order in light of this court's decision. So it's clear that there is no attempt to impose any kind of jurisdiction over the Republic of the Philippines in this order. Then what does the order do? The order, if we reinstate the settlement order, which is what I read the memorandum in order to do, if you reinstate the settlement, then you are now limited to $150 million. And when the settlement was off, presumably you were still entitled to the full judgment plus interest. By reinstating the settlement here, then Judge Real has now reimposed on you a cap of $150 million plus whatever interest you may be entitled to. I've gone through my time now, but I'd like to be able to answer the question if you can permit me to. Yes, it's our position that we still have the underlying judgment, but we're happy to work with the district court to determine whether or not the settlement can be reinstated and that would be a desirable outcome. And you haven't taken the appeal from the memorandum in order, so apparently you now have agreed that you are limited to seeking $150 million plus whatever interest you claim. No, in our brief filed in this case, we have a footnote indicating that we still feel like we're entitled to the underlying $3.5 billion, but nonetheless, we would certainly be happy to work with the district court. And what the district court wants to do, Your Honor, is through the order to show cause against the Philippine National Bank, is to find out what is going on with this money. And the question Judge Bernetti was asking of counsel for the republic, where is the money? We don't know where this money is. But the money, if you follow the money, it seems to be very simple. The settlement agreement was only a settlement agreement. If you have a judgment, you can't get the bucks until you execute. The settlement agreement provided its own methodology of execution in the satisfaction part. The satisfaction part said the republic shall cause the Philippine bank to transfer the money. The undertaking was the element, if you will, the execution element to do that. Now that the Philippines, as a sovereign, if we decide that issue, has decided through the president and the courts that they're not going to transfer the money. You've got now a settlement with no execution in it. Unless we have jurisdiction over them to tell them they have to execute. Am I correct? I'm following the money now. Yes, the court does have jurisdiction over the Philippine National Bank, which does lots of business. The private bank does lots of business here in Hawaii and throughout the United States and is a party to it in a related case, as you've already noted. At the Philippine bank, in the methodology that you set up in the satisfaction of the settlement, you allowed the Philippine bank to set up the condition on release. That failed because the release condition, i.e., approval of the court and the president, failed so the bank was off the hook on the undertaking. Now you're back to going to Judge Real, I guess, under the satisfaction paragraph and saying, what do we do now? There's another condition that we want to make sure the court understands. When the Swiss federal court transferred the money to the Philippine National Bank to be held in escrow, it imposed a specific condition that the Philippine government provide compensation to the victims in the class before the district court. And it's specifically referred to the court case that we've been working on now for 18 years. So the Philippine government has that duty, which they have totally failed to own up to or in any way try to address. And that's why we think that we... How do we get around the fact that we have decided that they're a sovereign and that you have no control and that you have no power? Dismiss this purported appeal, Your Honor. Allow the district court to continue the fact-finding that's going on, the activity that's now going on to determine where this money is, what the banks are doing, and to continue to evaluate the situation and to try to provide an appropriate remedy. What would be the result from a practical point of view if we were to hold that the appeal is properly before us and that the district court's orders were improper? In other words, if they go away, where is everybody? Where does everybody stand procedurally? The victims would still have their $3.5 billion judgment and would still be able to pursue assets as they can be discovered, and that's what we are doing. But whenever assets surface, the Republic swoops in and says, no, they're ours, and we wind up back here again. So that's why we would like you to dismiss this appeal and allow the district court to continue its fact-finding. I just want to make sure. I think this question has probably been asked a couple of times. I'd like to ask it just one more time. So is it your view, then, that the memorandum in order which reinstates the settlement binds the Republic of the Philippines? Are they bound by that? Not in the sense that the court has personal jurisdiction over them. No. The court acknowledges that this court's ruling. So if the Republic of the Philippines issued any kind of an order to its own banks or made a request of a Philippine bank that the Singapore bank give the money that the Republic of the Philippines claimed under its judgments, they would not be in violation of the memorandum in order issued by the district court in this case. The district court would not have the authority to issue any kind of a contempt order against the Republic. That's correct, Your Honor, under the record as it presently stands. Okay. And I want to yield, but just quickly, we do feel that you should go ahead with this case, even though the other case has been submitted. Okay. Mr. Edlin, we'll give you five minutes. We've answered a lot of questions. I will endeavor to do so, and I think I can answer most of the questions, Your Honor. And I think I would like initially to refer to a comment that several of your colleagues have made in prior cases, most recently in a case involving the Guam obstetricians, and that is appellate courts should be aware of their limitations while this court can guide and review, they cannot run the show. And here we have a district judge who has, I think quite courageously and with strength and creativity, attempted to bring this litigation to a close. We joined the Republic of the Philippines when they filed an AC brief in this case some years ago, and they said without limitation or reservation, the relations between the United States and the Philippines are not going to be harmed. In fact, they'd be improved if the Philippine citizens see that justice is available in the United States. And recently, when Senator Bai testified about the settlement that was reached, he said the same thing. Now, to answer your question, Judge Brunetti, Senator Bai's testimony said that an agreement was reached to settle. There were no conditions on it. That agreement may be enforceable. We believe that the sovereign immunity of the Republic of the Philippines was certainly waived under the Foreign Sovereign Immunities Act. Now, the rule there is, is there a direct connection between the Republic of the Philippines or the sovereign's activity in the United States court and the plaintiff's claims? How could there be a more direct connection than authorized counsel for the Republic of the Philippines and the President appearing before the district court having initiated over a year's process a settlement agreement and requesting the district court to approve it and enter a judgment, which the district court did? One question. This is maybe the same question that Judge Brunetti asked. Is the commission on good government the same as or an agent of the Republic? Are they the same thing? It is not the same. It is an agency of the Republic of the Philippines. So if the agency is the one that signed the settlement agreement, does that bind the sovereign? Senator Bai's testimony was that the Republic of the Philippines and the President agreed to it and that they were signed. All of the documents are not in the record at the time of Senator Bai's testimony a few months ago, but his testimony was unequivocal that there was an agreement to settle, and that agreement was, as each of you have indicated, $150 million plus interest from day one to the plaintiffs. The remainder of the money was up to the district judge ultimately to resolve. So the undertaking was only the methodology to carry it out. That's correct. If the undertaking failed by that condition that the court and the President refused to allow the Philippine bank to release the money from the escrow, it doesn't mean that you couldn't go forward then in your eyes with the settlement agreement wherever it goes. That's correct, including because I submit that the sovereign immunity of the Philippines, now with Senator Bai's testimony, has certainly been weighed, both under Foreign Sovereign Immunities Act, and I would also say very instructive is the recent decision in which you, Your Honor, the judge participated in the Yahoo case. Now, admittedly, that was specific jurisdiction for a foreign commercial organization, but looking at either the majority opinion there or Your Honor's dissent, clearly the conduct of the Republic of the Philippines here satisfies all of the tests. Well, that means with regard to action that you may go forward with Judge Rios. The problem we have now, I think, is a preliminary issue because of the prior decisions of this court as brought up by counsel. Can we go forward after the Credit Suisse case? Can we allow, are we now bound by what we told Judge Rios, and has Judge Rios gone beyond his authority that we reserved if we did in the Credit Suisse case? The answer to that, and I see the stop button, but I got one minute more. The answer to that is yes, of course, not only this court can go forward, but the district court can also. This court, I would request, first should reject this lateral appeal, and the Libyan bank case is practically on the nose. If you ever got a white horse case, that's the case. And secondly, that the district court, nothing the district court has done since the Credit Suisse case in any way has violated the mandate at that time. Counsel conceded in an answer to the question to you, Judge Graber, that it was a reasonable reading of the orders that Judge Rios had made in this case, that a fair reading, pardon me, a fair reading of the order. They don't apply to the Republic of the Philippines. Counsel, that was only in regard to one of the two. Both you and your co-counsel want to say that, but I would mean the two differently. I will urge that each of those orders, and I would focus more on finally the order to show cause that was directed specifically to the Philippine National Bank, but both the order and memorandum, which gave the history, and the order of compliance referred to such transfers. Now, such transfers go back to the financing institutions themselves that Judge Rios was directing his attention to, so that none of these orders in any way impinge, direct, instruct, or identify the Republic of the Philippines. I think I'd like to mention one thing, because I see the stop button here, and I'd come back to an earlier edition of this case in 103 Fed Third, where Judge Reimer said, every decade presents a few cases that force the judicial system to choose between forging a solution to a social problem on the one hand, and preserving its institutional values on the other hand. The procedures that have been employed here by the Republic of the Philippines to come in laterally and attempt to raise sovereign immunity, it's the kind of hammer they're looking for nails to hit. That appeal should be rejected, and we would urge that this court direct the district court here to have the hearing on the order to show cause directed to the Philippine National Bank, and to have a further hearing about the waiver of sovereign immunity that we would submit. Counsel, if we lack jurisdiction, we can't do any of that, correct? If we lack jurisdiction over the appeal, what other option would we have other than simply to dismiss? Well, I would urge your honor to write a very short opinion saying the appeal is dismissed, and the district court should continue its process on the order to show cause. Why isn't that just dictum, a conversation? Sometimes conversation is very useful. And ours, I'm afraid, has come to an end because of the time. Thank you very much. Ms. Jones, you have some rebuttal time, and your opposing counsels had quite a bit of extras, so we'll allow you some latitude as well. Actually, I have two questions that you can maybe address during your time. The first is whether you agree or disagree with the proposition that the Commission on Good Government is an agency within the government of the Republic of the Philippines and what effect that has. And the other is whether it remains your client's position that it would reject the opportunity for mediation before our court mediator. Thank you, your honor. First of all, I do agree. The Presidential Commission on Good Government is an agency of the Republic of the Philippines, and it's the branch of the Philippine government created to pursue and recover the assets misappropriated by former So when it entered into this agreement, was it binding the Republic of the Philippines? Your honor, it did not, in fact, enter into a settlement agreement. The undertaking is a conditional representation by Magdalena Amal, I think, is the person who was, on behalf of the Presidential Commission on Good Government, said that they would seek consent from the Republic. But that's putting the question before the Republic is all that was... Then is there anything to bind your client in the memorandum in order reinstating the settlement? Your honor, the memorandum in order reinstating the settlement absolutely cannot bind the Republic in any way. Counsel has discussed Senator Bai's participation in this process and said that Senator Bai was authorized to make representations on behalf of the Republic. That's absolutely untrue. If you look in the supplemental excerpts of record, the testimony of Senator Bai at pages 42 to 43 is that he was approached by the Marcoses, retained by the Marcoses to mediate a settlement, he said, by members of the Marcos family to ask if I would get involved in working with them to resolve a human rights case. And after reviewing the situation, he then thought that it would be productive to try to loop the Republic of the Philippines into those conversations, which he then tried to do in the Philippines. Just one quick follow-up. Then if you're not bound by the settlement, then of what import is the memorandum in order to you? The import of the memorandum in order is that it purports to enjoin and threaten with contempt the Philippines and the banks that the Philippine government has ordered to comply with the directives of the Philippine Supreme Court, if they in fact follow the Philippine Supreme Court. You just don't want them to get to the money. It tends to move back to the money. If the Philippine court says go get it, and our court says don't go get it, it's still all about the money, and we still haven't got down to the basics of this settlement agreement. If the order stands against the banks in Singapore at this time, or any other bank, they're not going to proceed as long as that order is on the book here. That's right. If there's jurisdiction over them. Well, there is no jurisdiction over them, because Rule 65D obviously only grants jurisdiction. The court's only jurisdiction here is in prosonam jurisdiction over the Marcos defendants in the class. Let's get down to reality. Rule 65D is conspiring with the Marcos, so there is no jurisdiction issue. I understand that, but if these orders go away, the Philippines takes the monies out of the Philippines banks and puts them wherever, we're going to start this game all over again, because there's still a judgment outstanding, and as far as I can tell, there's all kinds of conditions in the settlement agreement. One of them says the republic submits to the jurisdiction of the court for the sole and limited purpose of effecting the settlement. So if the court, and I don't know this, has jurisdiction to so-called reinstate this settlement, even if it was ever terminated, because there's another paragraph talking about termination, then you've still got a settlement that's floating out there that's going to have some effect on someone. Your Honor, that paragraph, I believe, is from the unsigned settlement agreement. This court is already in session. I see one, two, three, four signatures. I don't see the commission signature. That's right. Did they ever sign any copies? No. Well, I guess I have the same conundrum that Judge Wybie was struggling with earlier. If there's no binding settlement, if the settlement is illusory, which was my term, maybe that's the wrong term, I guess it's a term of art, but if there is no valid settlement, then the district court saying this invalid document, I'm going to waive it in front of you again, I don't see how that has any effect on your client's obligations at all. If your client isn't obligated to do anything in a settlement, then the fact of the settlement being reinstated or re-reinstated or anything, it seems to me would have no effect, and therefore you would like standing as having been not harmed. So on the contrary, if you were to say this settlement binds us and the court lacks jurisdiction over us, that I can see, but I guess it seems like you are arguing yourself out of standing. Your Honor, the court is attempting to impose the settlement agreement on the Philippines, and the Republic has standing to object to that imposition by any number of groups. We're looking only at these exact documents that are here, and these documents don't actually do that. I know you fear that that will happen in the future, but I guess I don't see how they do that now, if you are not a party to the settlement. Your Honor, I actually think that this is putting the cart before the horse a little bit. The district court did not have jurisdiction to issue these orders, and so whether or not... The first question for us is whether we have jurisdiction over this appeal. And that is, you do, because the orders purport to bind the Republic. Well, that's the very question. They purport to address the Republic. That is the very question. And whether when you go deeper into the underlying settlement documents and say, actually, the district court's action is also wrong on the merits, that doesn't affect the fact that the district court is purporting. The whole thrust of its order is to bind the Republic in this settlement agreement and to enjoin it from implementing the Philippine Supreme Court order, which the district court has analyzed and somehow decided is lacking in due process. The other issue, how the district court even gets to that point is mystifying, since this issue, the underlying dispute before the district court, is the dispute between the class and the Marcoses. And the Republic has already been held in the case we refer to as Estate 3, not to be a party to the dispute. This court in Estate 3 reviewed the question of whether the Republic had waived its immunity by conceding that the case against the Marcoses could go forward and encouraging that with an amicus brief, as the parties characterized it, and determined that that was not a waiver of immunity and that the district court could not reach out and try to exert jurisdiction over the Republic. I'd like you to also address my other question, whether your client is or is not willing to engage in mediation under the auspices of the court's mediator or otherwise. Your Honor, the Republic is immune and is not willing to waive that immunity to participate in proceedings. Would the Republic be willing to participate in proceedings if it could do so sort of as a special appearance, that is, without waiving its immunity to litigation? Obviously, I'm not in a position without consulting with my client to make that determination. At this point, all we've discussed with them is whether they would be willing to mediate as things stand. And the answer is clearly that they would not. They are not willing to waive their immunity. And at this point, the Republic's entitlement to the assets is not before this court in any way. That dispute is a dispute that has been adjudicated in the Philippines, and it's one that the district court should defer to out of considerations of comity. But the only issue here is whether the district court can reach out and do these extra territorial orders directed to banks and other entities in Singapore, the Philippines, Switzerland, interfering with the Swiss court directives that were at issue in the Credit Suisse case and are still at issue, interfering with the implementation of the Philippine Supreme Court decision, and those questions about whether the district court can try to enforce its judgment against the Marcoses by breaching out and enjoining parties that are not in any way in concert with the Marcoses are jurisdictional questions that are really unrelated to the underlying entitlement to these assets. And that's our position. And we're not, without speaking to my clients certainly, I cannot say that we would be willing to suddenly step in and mediate entitlement to the assets themselves in the United States courts. Well, you didn't, if we have this right then, you didn't sign the settlement agreement. The Republic did. Is that right? I'm sorry, did you say did or did not? The Republic did not sign the settlement agreement. That is correct. The Republic did sign an undertaking which would have released some funds to fund the settlement agreement even though you didn't sign it if the courts and the President would allow it, and that failed. The purpose of the undertaking was that Meg Dengal-Elma, the chairman of the PCGG, would go back to the Republic and see if they would be willing to sign and fund the settlement. To release the money, as I understand it.  And you now say that you don't want to participate in mediation. So it sounds like you're saying the Republic has, there's no jurisdiction over them or they have not participated in any settlement amount and we're still in the position of scrambling for the money somewhere. That's right. And as the Court held in Estate 3, while that's a difficult situation, it's not one that results in a waiver of the Republic's immunity. And as the Court has held in the two Credit Suisse cases, although the circumstances are unusual, it's very public, the amounts of money at issue are large, again, that is not enough to justify contravening the usual principles. And I'm going back to where Judge Graber is on our jurisdiction. If I go back to the Credit Suisse case, what we said was we told the District Court that he should not tamper with the parties or the money, except we reserve, we being the Court, and now it's in this panel, we reserve jurisdiction to modify that order. So it appears it's wide open on what we do as a circuit court relative to that munition or order given to the judge not to tamper, which he's already done. Is that right? That's almost correct, Your Honor. The District, this Court in Credit Suisse ordered that any motions for vacation or modification of this order shall be filed with the clerk of this Court, the Ninth Circuit, and no such motion has been made to this Court. Rather, the District Court on its own bat purported to issue these orders and take action, and we have appealed those and the parties are now saying, no, no, the District Court should have been allowed to go forward and these orders should stand. This Court has not been asked by a motion to vacate the Credit Suisse decision or to take any action with respect to it except by the Republic to uphold its order previously issued and to ensure that the District Court does continue to comply with that order or once again complies with that order. If you don't have further questions, Your Honor, I'll say my time has long since up. Thank you. Well, we appreciate the arguments at long last of all parties, and they've been very helpful to us. And with that, the case just argued is submitted, and we will stand adjourned for this morning's session. Thank you. Thank you. Thank you. Thank you.
judges: Brunetti, Graber, Bybee